# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**

  **Plaintiff,**

vs.

**LARRY D. JOHNSON,**

  **Defendant.**

Case No. 17-20034-01-DDC

## MEMORANDUM AND ORDER

This matter is before the court on pro se[1] defendant Larry Johnson's Motion to Dismiss Indictment (Doc. 58). After considering the arguments asserted in Mr. Johnson's motion, the government's Response (Doc. 61), and Mr. Johnson's Reply (Doc. 67), the court concludes that it can decide Mr. Johnson's motion based on the parties' filings. None of the arguments can support Mr. Johnson's request to dismiss the Indictment. This Order addresses those issues and, below, explains why none of them support Mr. Johnson's motion for dismissal of the Indictment.[2]

The government has charged Mr. Johnson in a three count Second Superseding Indictment. Doc. 70. Count One charges Mr. Johnson with violating 21 U.S.C. § 841(a)(1) and

---

[1]   Because Mr. Johnson proceeds pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of advocate for a pro se litigant. *Id.*

[2]   The court liberally construes Mr. Johnson's motion to include allegations that a conflict of interest existed between him and his former counsel. Doc. 58 at 1. But, those arguments do not affect Mr. Johnson's Motion to Dismiss the Indictment. In a status conference on October 18, 2019, Mr. Johnson informed the court that he had no evidence to present to support his conflict of interest allegations against his former counsel, Robert Calbi. Previously, the court removed Mr. Calbi as standby counsel and appointed Thomas Telthorst as substitute standby counsel. Doc. 85. Also, during this same status conference, Mr. Johnson declined an opportunity to make oral arguments to support his motion and, instead, requested that his motion "stand on the record."

(b)(1)(C), by knowingly and intentionally possessing cocaine with intent to distribute. Count Two charges Mr. Johnson with violating 18 U.S.C. §§ 924(c)(1)(A)(i), for knowingly possessing a firearm in furtherance of a drug trafficking crime. Count Three charges Mr. Johnson with violating 18 U.S.C. § 922(g)(1) and 924(a)(2), for knowingly possessing a firearm with knowledge he had previously been convicted of a crime punishable by more than one year in prison.

Mr. Johnson moves to dismiss the Indictment, among other things, and argues his right to speedy trial has been impeded.

### I. Motion to Dismiss the Indictment

Mr. Johnson moves to dismiss the Indictment. This motion appears to assert three primary arguments for dismissal. Mr. Johnson argues (1) his former appointed counsel, Robert Calbi, provided defective representation; (2) the court lacks subject matter and personal jurisdiction over Mr. Johnson; and (3) the Indictment is defective because he did not have notice of it, the prosecution committed *Brady* violations, and the Indictment cites 18 U.S.C. §§ 922(g)(1) and 924(a)(2), which are unconstitutional. Doc. 58. The court addresses each argument below.

#### A. Defective Representation

Mr. Johnson asserts that his former appointed counsel and, later, standby counsel, Robert Calbi, "has conspired with the UNITED STATES ATTORNEY['S] OFFICE ("USAO") [and] violat[ed his] Sixth Amendment Right to assistance of counsel . . . ." Doc. 58 at 1. Mr. Johnson also asserts that Mr. Calbi violated his "procedural and substantive right to due process" and also conspired to violate his right to a speedy trial. *Id.* at 1–2. The court construes Mr. Johnson's statements to allege a conflict of interest existed between Mr. Calbi and Mr. Johnson. The court

2

considers Mr. Johnson's conflict of interest arguments in a separate section, below. Nevertheless, the court considers, here, whether Mr. Johnson's claims separately warrant dismissal of the Indictment.

*First*, the court construes Mr. Johnson's motion to assert an ineffective assistance of counsel argument. Doc. 58 at 1. He asserts, among other things, that his former counsel "violat[ed his] Sixth Amendment Right to assistance of counsel . . . ." *Id.* Mr. Johnson's argument for ineffective assistance of counsel is premature as he has not yet been convicted of a crime. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (establishing the test to challenge a conviction based on ineffective assistance of counsel). And, even if counsel's representation was defective in some way, it is not grounds to dismiss the Indictment. Whether Mr. Johnson received effective assistance of counsel does not affect the Indictment's validity. Indeed, all the behavior Mr. Johnson's motion alleges occurred *after* the grand jury returned the Indictment. Thus, the court denies his request to dismiss the Indictment based on ineffective assistance of counsel.

### B. Lack of Jurisdiction

*Second*, Mr. Johnson's motion asserts the court lacks jurisdiction over him for three reasons. He asserts, first, that the U.S. Attorney's failure to provide him with a copy of the "complaint" against him under Federal Rule of Criminal Procedure 3 deprived him of the chance to pursue a meaningful defense. Doc. 58 at 1. Mr. Johnson did not receive a copy of a complaint under Rule 3 because the United States never filed a criminal complaint against him. Instead, the government elected to charge Mr. Johnson by securing an Indictment from a Grand Jury. *See* Doc. 1; Fed. R. Crim. P. 9(a) ("The court must issue a warrant . . . for each defendant named in an indictment . . . ."). Rule 3 is irrelevant to this case. The court thus denies Mr. Johnson's

request to dismiss the Indictment for failure to comply with Federal Rule of Criminal Procedure 3.

Next, Mr. Johnson's motion asserts that the court lacks jurisdiction over him because the Indictment does not allege jurisdiction. Doc. 58 at 2. This assertion is simply wrong. The Indictment, First Superseding Indictment, and Second Superseding Indictment all allege violations of federal criminal laws and that the relevant acts occurred "in the District of Kansas." Doc. 1 at 1–2; Doc. 47 at 1–2; Doc. 70 at 1–2. *See United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) ("[A]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." (quoting *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994)). Mr. Johnson's argument is without merit.

Finally, Mr. Johnson's motion contends the court lacks jurisdiction over him because the Indictment does not reference 18 U.S.C. §§ 7 and 13. Mr. Johnson reasserted this argument in open court on October 4, 2019. The court denied Mr. Johnson's motion because the statutes he cites do not apply to this case. Both statutes apply to areas of the United States that are not officially part of the United States: 18 U.S.C. § 7 defines "special maritime and territorial jurisdiction of the United States" and 18 U.S.C. § 13 contains laws that apply to portions of land "not within the jurisdiction of any State, Commonwealth, territory, possession or district . . . ." The Indictment (and its successors) charge Mr. Johnson with committing crimes here in the state of Kansas. Neither § 7 nor § 13 applies.

Mr. Johnson also cites *United States v. Prentiss*, 206 F.3d 960 (10th Cir. 2000) and 40 U.S.C. § 3112. Again, neither applies to this case. *Prentiss* interpreted the Indian Country Crimes Act and held that "the Indian status of the defendant and victim are essential elements under 18 U.S.C. § 1152," and thus, the indictment must allege them. *Prentiss*, 206 F.3d at 966.

4

The government doesn't contend that Mr. Johnson is of Indian ancestry and it doesn't charge him with violating § 1152. Section 3112 of Title 40 of the United States Code governs the "acquisition and acceptance of jurisdiction" over land. It does not govern criminal jurisdiction in the District of Kansas. The court thus concludes the authority Mr. Johnson cites is not relevant to this case.

The charges in the Indictment allege Mr. Johnson acted in the District of Kansas. It will be the government's burden at trial to convince the jury beyond a reasonable doubt that Mr. Johnson committed requisite acts in Kansas. But the court cannot dismiss the Indictment because Mr. Johnson claims the allegations in the Indictment are untrue. *United States v. Powell*, 767 F.3d 1026, 1031 (10th Cir. 2014) ("[A] challenge to the indictment is not a vehicle for testing the government's evidence. Rather, an indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." (quoting *United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir. 2008))). The court thus denies Mr. Johnson's Motion to Dismiss the Indictment for lack of jurisdiction.

### C. Defective Indictment

*Third*, Mr. Johnson argues the Indictment is defective for several additional reasons. First, his motion contends the Indictment is fraudulent because the government failed to present evidence of all "the essential elements of the charged offenses." Doc. 58 at 3. Mr. Johnson also contends that because the United States failed to establish jurisdiction over him to the Grand Jury under 18 U.S.C. §§ 7 and 13, *United States v. Prentiss*, 206 F.3d 960 (10th Cir. 2000), and 40 U.S.C. § 3112, the Indictment is defective. The court addressed this aspect of the motion above. The authority Mr. Johnson cites does not apply.

5

Mr. Johnson's motion next asserts that his former counsel, Mr. Burdick, failed to give him notice that a Grand Jury was empaneled against him. Doc. 58 at 2. Mr. Johnson contends he was in custody and Mr. Burdick "knew or should have known that the Indictment was going to be Filed . . . ." Doc. 58 at 2. To support this argument, Mr. Johnson cites "USC 1876(a) and 2076." *Id.* Mr. Johnson's motion doesn't ever specify which title (or titles) of the United States Code he is citing. But after he cites § 1876(a) and § 2076, he has inserted language contained in 28 U.S.C. § 1867(a). Assuming this is the statutory provision Mr. Johnson meant to cite, his argument is misplaced.

Title 28 U.S.C.§ 1867(a) permits a defendant in a criminal case to move to dismiss the indictment "on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury." 28 U.S.C. § 1867(a). This subsection also specifies when the defendant must make objections of this kind. The court need not decide whether Mr. Johnson's objection under this provision is timely—it probably isn't—because he hasn't asserted any violation of Title 28. Instead, Mr. Johnson makes just one conclusory assertion: that Tim Burdick failed to give him notice "of his Office's action to empanel a Grand Jury to charge [him], and allow [him] to make a determination of whether [he] desired to be present before the swearing in of any of the Grand Jurors . . . ." Doc. 58 at 2. Mr. Johnson doesn't cite any provision of Title 28 or any other source of American law that gives him the right that he purportedly lost. And there isn't any. Neither Mr. Burdick nor the Office of the Federal Public Defender empanels a grand jury. The court rejects Mr. Johnson's argument. It is baseless.[3]

This conclusion leaves Mr. Johnson's argument under "USC . . . 2076." *Id.* Again, Mr. Johnson doesn't specify which § 2076 he is trying to invoke. He can't mean 28 U.S.C. § 2076

---

[3] Mr. Burdick is not (and was not) a member of the United States Attorney's office. Doc. 58's assertion to that effect is just plain wrong.

because that statute was repealed in 1988. Act of Nov. 19, 1988, Pub. L. No. 100-702, sec. 401, § 2076, 102 Stat. 4642 (repealing Section 2076 of the Rules Enabling Act). Nor can he mean 18 U.S.C. § 2076, for that provision criminalizes certain misconduct by a clerk of a district court of the United States. It is irrelevant here. The court declines to engage in speculation about the defendant's intentions. The court rejects this argument as well.

Next, Mr. Johnson asserts the charges under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) are unconstitutional under the Second Amendment to the United States Constitution. To support his argument, Mr. Johnson cites *United States v. Cruikshank*, 92 U.S. 542 (1875), asserting that the Second Amendment protects the right to bear arms which "shall not be infringed." Doc. 58 at 3. The Supreme Court of the United States addressed this very issue in *District of Columbia v. Heller*, 554 U.S. 570 (2008). "Like most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. "Nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." *Id.* Supreme Court precedent does not support the argument that 18 U.S.C. §§ 922(g)(1) and 924(a)(2) are unconstitutional encroachments on Mr. Johnson's rights under the Second Amendment.

Finally, Mr. Johnson's motion contends the government violated *Brady* by failing to present exculpatory evidence to the Grand Jury. But, "[a] grand jury investigation is not an adversarial process" that requires *Brady* disclosures. *United States v. Jones*, 160 F.3d 641, 646 (10th Cir. 1998). And the court cannot dismiss an indictment for failure to disclose exculpatory evidence. *See United States v. Williams*, 504 U.S. 36, 51 (1992) (explaining that "neither in this country nor in England has the suspect under investigation by the grand jury ever been thought to have a right to testify or to have exculpatory evidence presented."). Thus, the court denies Mr.

Johnson's Motion to Dismiss the Indictment for failure to disclose exculpatory evidence to the Grand Jury.

## II. Speedy Trial Objection

Mr. Johnson's motion also invokes his speedy trial right. Mr. Johnson asserts that his former counsel, Mr. Calbi, "conspired with AUSA TRISTRAM, to File continuances with the Court without [his] knowledge or consent." Doc. 58 at 2.

A defendant's right to a speedy trial is both a statutory and a constitutional right. A defendant's constitutional right is found in the Sixth Amendment. U.S. Const. Amend. VI. The Sixth Amendment guarantees that all criminal defendants "shall enjoy the right to a speedy and public trial" without unnecessary delay. *Id.* In general terms, the statutory right to a speedy trial is codified in 18 U.S.C. § 3161(c)(1) of the Speedy Trial Act. This Act provides that trial "shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." *Id.*

Mr. Johnson's 70 days have not yet expired. So, his right to a speedy trial has not been violated. Nevertheless, the court liberally construes Mr. Johnson's argument to invoke his right to a speedy trial under both the Speedy Trial Act ("STA"), 18 U.S.C. §§ 3161–74, and the United States Constitution and considers his argument below.

### A. The Speedy Trial Act

The STA requires that "the trial of a defendant charged in an . . . indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the . . . indictment." 18 U.S.C. § 3161(c)(1). But, "[c]ertain periods of delay, outlined in detail in the STA, are excluded and do not count toward the seventy-day limit." *United States*

*v. Apperson*, 441 F.3d 1162, 1178 (10th Cir. 2006) (citing 18 U.S.C. § 3161(h)(1)–(9)). Among those periods, the STA excludes delays "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). The STA also excludes delays "reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. § 3161(h)(1)(H). But, if the government files a superseding indictment charging a criminal defendant with additional offenses, this does not necessarily toll the 70-day speedy trial clock for the original charge. *See Apperson*, 441 F.3d at 1178 (citing *United States v. Bermea*, 30 F.3d 1539, 1567 (5th Cir. 1994) ("The filing of a superseding indictment does not affect the speedy trial clock for offenses charged in the original indictment . . . .")); *see also United States v. Ray*, 899 F.3d 852, 862 n.4 (10th Cir. 2018) ("'[W]hen the later charge is merely a part of or only "gilds" the initial charge, the subsequent charge is subject to the same Speedy Trial Act limitations imposed on the earlier indictment.'" (quoting *United States v. Andrews*, 790 F.2d 803, 808 (10th Cir. 1986) (other citations omitted))).

The court construes Mr. Johnson's motion to assert his rights under the STA. The court's review of the docket calculates that 47 of the 70 available days under the STA have been consumed. The court also acknowledges the age of this case. The record indicates that the court has paused Mr. Johnson's speedy trial clock for 781 days. And 576 of those days were paused "in the interest of justice." *See, e.g.*, Docs. 38, 57. But, the record also reflects the court paused the clock for significant time in response to requests that Mr. Johnson made. For example, Mr. Johnson asked the court for continuances 11 times between February 2, 2018 and July 7, 2019. Docs. 14, 16, 17, 23, 24, 26, 28, 35, 36, 38, 57. The reasons he gave for his continuance requests

included his need for "legal research related to his case" and counsel's need to review that research with him (Doc. 14), a need to receive and review DNA evidence (Docs. 14, 16, 17, 24, 26, 28), time to get his newly appointed counsel up to speed (Doc. 46), and time to prepare for trial after he withdrew his intent to change his plea (Doc. 38). The court granted these requests and paused the speedy trial clock for 414 days. Around December 18, 2018, Mr. Johnson notified the court of his intent to change his plea. Doc. 34. But Mr. Johnson also asked the court to continue his change of plea hearing twice, which the court granted. Docs. 35, 36. Because of these requests, the court paused the speedy trial clock for 92 days. And, Mr. Johnson's decision to withdraw his intent to change his plea and proceed pro se yielded another 50 day pause at his request. Doc. 57. In sum, the court has paused the speedy trial clock for 556 days at Mr. Johnson's request.[4]

This calculation leaves 23 remaining days until the STA requires the court to begin Mr. Johnson's trial. But, the court again has properly excluded time from his speedy trial clock while Mr. Johnson waits for appointment of new counsel to serve as defendant's standby counsel. *See* Doc. 84. The court found it necessary to take this action because Mr. Johnson made various accusations against standby counsel.

Given all the excludable time, the court concludes that Mr. Johnson has not been deprived of his rights under the STA.

### B. The Sixth Amendment Right to a Speedy Trial

The court recognizes that the right to a speedy trial under the Sixth Amendment may be violated even if the STA is not. *See United States v. Black*, 830 F.3d 1099, 1107 n.13 (10th Cir.

---

[4] This calculation does not account for other time paused automatically for various motions filed in the case, *e.g.*, this Motion to Dismiss Indictment. This motion alone has paused the speedy trial clock for 86 days.

10

2016) (analyzing whether the government violated the defendant's Sixth Amendment Right to a speedy trial even though no argument was raised under the STA on appeal). "To determine whether a defendant's Sixth Amendment right has been violated, the court balances four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) whether the delay prejudiced the defendant." *United States v. Larson*, 627 F.3d 1198, 1207 (10th Cir. 2010) (citing *United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010)). No single factor is enough to determine a speedy trial violation. *Id.*

*First*, Mr. Johnson must show a "presumptively prejudicial delay" that "stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* at 1208. "The longer the delay, the more likely it is that the first factor will weigh in the defendant's favor." *Id.* Here, Mr. Johnson's first appearance occurred on September 1, 2017, more than two years ago. "Two years is twice the time presumed to be ordinary." *Seltzer*, 595 F.3d at 1176. The court finds this factor weighs in favor of Mr. Johnson.

*Second*, the court must consider the reasons for the delay. *Larson*, 627 F.3d at 1207. This factor is "especially important." *Id.* at 1208. The government must demonstrate the reasons for the delay. *Id.* "Delays attributable to the defendant do not weigh against the government." *Id.* (quoting *United States v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006)). If the defendant is "the primary cause of the delay" this factor "weighs heavily against him." *Id.* (quoting *United States v. Toombs*, 574 F.3d 1262, 1274 (10th Cir. 2009)) (internal quotations omitted).

Here, the government contends Mr. Johnson's requests to continue are the reason for the delay. Doc. 61 at 6–7. The government asserts the court granted all continuances in open court with Mr. Johnson present. And, the court noted that speedy trial time was excluded for the

continuances. *See, e.g.*, Docs. 10, 11, 16, 17, 23, 25, 26. The government notes Mr. Johnson notified the court that he wanted to change his plea in December 2018 but asked for two continuances of the change of plea hearing. *See* Docs. 34, 35, and 36. The government contends that "Johnson has at least been aware of the continuances in this case, and in a few instances proceedings were continued or prolonged at his request." Doc. 61 at 8. Mr. Johnson contends these requests were made without his knowledge. But, the record is contrary. It reflects that Mr. Johnson appeared in person when the court granted these requests. *See, e.g.*, Docs. 10, 11, 16, and 17. And, Mr. Johnson's former counsel filed three motions for continuance with the court. Docs. 12, 14, and 24. In those motions, Mr. Johnson's counsel asked for more time to conduct an investigation on Mr. Johnson's behalf and wait for DNA evidence to arrive. Also, his counsel asserted that they conferred with Mr. Johnson about his right to a speedy trial. Thus, Mr. Johnson's counsel made him aware that he was filing a motion for continuance. The court concludes that this factor weighs heavily against Mr. Johnson because his counsel requested the continuances in this matter and Mr. Johnson knew about them.

*Third*, the court must consider Mr. Johnson's assertion of his right to a speedy trial. "The sooner a defendant raises the speedy trial issue, the more weight this factor lends to his claim." *Larson*, 627 F.3d at 1208 (internal quotations omitted). But, "this factor weighs against a defendant who requests continuances and waits for months to assert his speedy trial right." *Id.* Here, the court considers the many continuances requested by Mr. Johnson. Mr. Johnson first raised his speedy trial rights more than two years after his arraignment. As discussed above, the primary reason for delay is attributable to Mr. Johnson's repeated requests for continuance. Thus, the court finds this factor weighs against Mr. Johnson.

*Last*, the court must determine whether any delay prejudiced Mr. Johnson. A defendant "may rely on" a presumption of prejudice if there is extreme delay. *Id.* at 1209. Our Circuit has held that delay exceeding five or six years may constitute extreme delay, and thus prejudice to the defendant is presumed. *Id.* (citing *Toombs*, 574 F.3d at 1275). Here, any delay is not extreme because only two years have passed since Mr. Johnson's arraignment. And Mr. Johnson caused much of the delay. Thus, Mr. Johnson cannot rely on a presumption of prejudice.

If a presumption of prejudice is not available, the defendant must make a particularized showing of prejudice. *Id.* The court considers several important interests, the most important of which is minimizing the "possibility that the defense will be impaired." *Id.* (citing *Selzer*, 595 F.3d at 1179). "Showing a mere possibility of prejudice is insufficient." *Id.* Here, Mr. Johnson's sparse allegation only asserts a possibility of prejudice. The court thus concludes this factor weighs against Mr. Johnson because he has failed to allege more than a mere possibility of prejudice.

Thus, the balance of these factors weighs against Mr. Johnson. Three of the four factors weigh against him and, in one instance, heavily against him. The only factor favoring Mr. Johnson is the length of the delay. But Mr. Johnson himself is responsible for much of this delay. So even that factor is one of limited value. The court thus concludes Mr. Johnson's Sixth Amendment right to a speedy trial has not been violated.

### III. Conflict of Interest

The court construes parts of Mr. Johnson's motion to assert he received ineffective assistance of counsel because a conflict of interest existed between his former standby counsel, Mr. Calbi, and Mr. Johnson. Specifically, Mr. Johnson asserts that his former appointed counsel and, later, standby counsel, Robert Calbi, "has conspired with the UNITED STATES

13

ATTORNEY['S] OFFICE ("USAO") [and] violat[ed his] Sixth Amendment Right to assistance of counsel . . . ." Doc. 58 at 1. Mr. Johnson also asserts that Mr. Calbi violated his "procedural and substantive right to due process" and also conspired to violate his right to a speedy trial. *Id.* at 1–2.

Mr. Johnson's argument for ineffective assistance of counsel is premature because he has not yet been convicted of any crime. *See Strickland v. Washington*, 466 U.S 668, 687 (1984) (establishing the test to challenge a conviction based on ineffective assistance of counsel: (1) deficient performance that (2) prejudiced the defendant). Instead, "ineffective assistance of counsel claims should be brought in collateral proceedings . . . ." *United States v. Holloway*, 826 F.3d 1237, 1243 (10th Cir. 2016) (internal quotations omitted).

Even if Mr. Johnson's argument was not premature, he has not met his burden. To demonstrate ineffective assistance of counsel from counsel's alleged conflict of interest, the defendant must show "that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348–49 (1980). Mr. Johnson has not shown how his representation was adversely affected. Nor could he. First, Mr. Johnson has not been convicted of a crime. He pleaded not guilty to the charge in the indictment. Doc. 72. And he awaits trial on those charges. Second, even if the court accepts Mr. Johnson's conclusory claim that Mr. Calbi "conspired" with the U.S. Attorney's office as true, Mr. Johnson never pleaded guilty to any crime. Thus, he has not been prejudiced by any alleged "conspiracy." The court need not consider Mr. Johnson's arguments because they are premature, and he has not shown any prejudice to his representation or defense.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Johnson's Motion to Dismiss Indictment (Doc. 58) is denied.

**IT IS SO ORDERED.**

**Dated this 22nd day of October 2019, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**